[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 02, 2002
THOMAS K. KAHN
CLERK

_____

No. 99-12095

_____

D. C. Docket No. 98-01704-CV-BU-S

ROYAL INSURANCE COMPANY
OF AMERICA, a.k.a. R.E. Grills
Construction Co., Inc.,

Plaintiff-Appellant,

versus

WHITAKER CONTRACTING CORP.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 2, 2002)**

Before BIRCH, BARKETT and ALARCON*, Circuit Judges.

* Honorable Arthur L. Alarcon, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

BIRCH, Circuit Judge:

In this appeal, we must decide whether a paving subcontractor/indemnitor, defendant-appellee, Whitaker Contracting Corporation ("Whitaker"), must indemnify the insurer, plaintiff-appellant Royal Insurance Company of America ("Royal"), of the general contractor/indemnitee, R.E. Grills Construction Company, Inc. ("Grills"), which contracted with the State of Alabama for highway work because of a fatal automobile accident that occurred at the work site resulting from allegedly obstructive barricades.[1] As liability insurer, Royal paid $400,000, which settled the claims against Grills, and sought indemnity from Whitaker pursuant to its indemnity agreement with Grills. Construing the indemnity-contract language against Grills, the drafter, the district judge granted summary judgment to Whitaker.[2] Because Grills's state contract placed upon Grills a

---

[1] Our previous opinion details the facts of this case. Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1037-40 (11th Cir. 2001). Discovery revealed that obstructive barrels and barricades were placed and maintained by Grills under the supervision of the Alabama Department of Transportation; on the day of the automobile collision involving a fatality, the barrels and barricades did not comply with standard specifications or the specific site plan in placement from the highway being paved; and Whitaker was paving near the intersection when the accident occurred, although there was no evidence that Whitaker had moved any of the barrels or barricades after Grills had placed them.

[2] The indemnity provision of the subcontract between Grills and Whitaker at issue in this case states: "The Subcontractor covenants to indemnify and save harmless and exonerate the Contractor and the Owner of and from all liability, claims and demands for bodily injury and property damage arising out of the Work undertaken by the Subcontractor, its employees, agents or its subcontractors, and arising out of any other operation no matter by whom performed for and on behalf of the Subcontractor, whether or not in whole or in part to conditions, acts or

nondelegable duty to maintain the safety of the roadway to motorists during the

highway work, we certified the following question to the Supreme Court of

Alabama:

> MUST AN INDEMNITY AGREEMENT SPECIFICALLY STATE
> THAT AN INDEMNITOR WILL INDEMNIFY THE INDEMNITEE
> FOR A NONDELEGABLE DUTY TO WHICH THE INDEMNITEE
> IS SUBJECT UNDER STATE LAW TO REQUIRE
> INDEMNIFICATION FOR THE FAILURE TO EXECUTE SUCH
> NONDELEGABLE DUTY, WHICH RESULTS IN THE
> UNDERLYING CAUSE OF ACTION FOR WHICH
> INDEMNIFICATION IS SOUGHT?

Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1044

(11th Cir. 2001).

The Alabama Supreme Court has answered our question in the negative and

clarified that an indemnity agreement need not state specifically that an indemnitor

indemnifies the indemnitee for a nondelegable duty to be enforceable. Royal Ins.

Co. of America v. Whitaker Contracting Corp., __ So.2d __, __, 2002 WL 27985,

---

omissions done or permitted by the Contractor or Owner." R1-15-Exh. E at 2. The district judge found that the clause "whether or not in whole or in part to conditions, acts or omissions done or permitted by the Contractor or Owner" was nonsensical because it "modifies the word 'Work.'" R1-20-5-6. This interpretation results in liability for work done by Whitaker, the subcontractor, "to" actions or omissions done by Grills, the contractor. The district judge stated that "[i]t is nonsense to state that a person could actively 'do' an omission or that another person could perform work 'to' that omission." Id. at 6. Accordingly, he concluded that "this construction of the indemnity clause would only permit indemnification for claims arising out of the negligence of the subcontractor, not based on the contractor's own negligence." Id.

at *6 (Ala. Jan. 11, 2002).[3]  While an indemnitee may be indemnified for its

nondelegable duty, it nevertheless retains this duty:

> In the case, as here, of an independent contractor who undertakes a nondelegable duty owed by another, an agreement by the independent contractor to indemnify the other for a breach of the duty is beneficial and not harmful to those who may be injured by the breach. First, the indemnification obligation will motivate the independent contractor to perform the duty carefully in order to avoid causing an injury and owing money on the indemnification obligation.  Second, the indemnification agreement does not deprive an injured plaintiff of any otherwise existing source of payment, for the party who owes the nondelegable duty remains liable for damages caused by its breach of that duty.

Id. at *8 (Johnstone, J., concurring).  Because Whitaker's indemnity agreement

with Grills included Grills's nondelegable duty under its contract with the state of

maintaining the safety of the roadway for the traveling public during the paving,

Whitaker must reimburse Royal for the $400,000 plus interest, costs, and attorney's

_____

[3] The Alabama Supreme Court recognized that it has held that a party may enter into an indemnity agreement for its own negligence, provided ""the parties knowingly, evenhandedly, and for valid consideration, intelligently"" agreed, ""including indemnity against the indemnitee's own wrongs"" and this agreement was ""expressed in clear and unequivocal language.""  Royal Ins. Co., __ So.2d at __, 2002 WL 27985, at *5 (quoting City of Montgomery v. JYD Int'l, Inc., 534 So.2d 592, 594 (Ala. 1988) (quoting Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 176 (Ala. 1980)).  Using this rationale, the court concluded that "the words 'nondelegable duty' need not be expressly included in an indemnity provision before an agreement to indemnify a party for a breach of its nondelegable duty will be enforceable."  Id. at *6.  The court stated, however, that the indemnitee has the burden of proof to establish its entitlement to indemnification under the agreement.  Id.

fees that it paid to settle the suit on Grills's behalf for the death that resulted from

barricades that obscured visibility on the area of the road being paved.[4]

Accordingly, the district court's granting summary judgment for Whitaker and

dismissing this case with prejudice is REVERSED, and we REMAND with

instructions to enter judgment for Royal.

---

[4] Alabama rules of contract construction permit supplying "due" in the challenged indemnity agreement to give the entire indemnity provision meaning rather than making this omission the basis of negating the indemnity agreement. See, e.g., Attorneys Ins. Mut. of Ala., Inc. v. Smith, Blocker & Lowther, P.C., 703 So.2d 866, 870 (Ala. 1996) ("Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions."); Green v. Merrill, 308 So.2d 702, 704 (Ala. 1975) ("It is well settled that the terms of an insurance policy are to be given a rational and practical construction. . . . [P]rovisions of a policy which clearly indicate the parties' real intent are not to be given a strained construction to raise doubts where none exist." (citation omitted)). If "due" were inserted, as Royal has argued in this litigation, then the last clause of the indemnity agreement would read: "whether or not in whole or in part [due] to conditions, acts or omissions done or permitted by the Contractor or Owner." This interpretation rectifies the troublesome language in the indemnity agreement and honors the parties' intentions because Whitaker agreed to the broad indemnity provision in the indemnity agreement to obtain the paving subcontract from Grills.